J-S84014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBIN LEACH, | |
| Appellant | No. 2296 EDA 2015 |

Appeal from the Judgment of Sentence of October 29, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002066-2012

BEFORE:  OLSON, SOLANO and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JANUARY 04, 2017**

Appellant, Robin Leach, appeals from the judgment of sentence entered on October 29, 2014, as made final by the denial of her post-sentence motion on March 7, 2015.  We affirm.

The factual background and procedural history of this case is as follows.  In or around 2000, Yolanda Harper ("Harper") and Steven Shipley ("Shipley") began a romantic relationship.  In November 2010, Harper learned that Shipley was also in a romantic relationship with Appellant.  Thereafter, Appellant began sending Harper threatening and harassing messages via a variety of electronic platforms.  In those messages, Appellant demanded that Harper terminate her relationship with Shipley.  Beginning in August 2011, Appellant began harassing Harper on a daily basis, including sitting in her vehicle outside of Harper's residence.

* Retired Justice specially assigned to the Superior Court

On November 25, 2011, Harper observed Appellant sitting in her vehicle outside of Harper's residence. When Harper complained to Shipley, he requested that Harper meet him at his place of employment. Harper and her daughter, Vashti Wilks ("Wilks"), then traveled to Appellant's place of employment. Appellant, along with several other individuals, followed Harper to Shipley's place of employment. Shipley got into Harper's vehicle and they, along with Wilks, drove away. Appellant followed them in her vehicle. When Harper, Shipley, and Wilks stopped at a gas station, Appellant and the other occupants of her vehicle exited the vehicle and began harassing Harper, Shipley, and Wilks. Appellant urged her daughter, one of the occupants of her vehicle, to physically assault Wilks.

Harper, Shipley, and Wilks began driving to the nearest police station. When they were one block from the police station, Appellant's vehicle and several other vehicles surrounded Harper's vehicle. Appellant exited her vehicle and told Shipley, who was sitting in Harper's passenger seat, that she had ten more vehicles coming and that Harper was going to be murdered that evening. Eventually, Harper made it to the police station. Unfortunately, police declined to file charges and instead instructed Harper to file a private criminal complaint.

When Harper arrived back at her residence there were several vehicles located in front of her home. When Shipley exited Harper's vehicle, Tyrone McDuffie ("McDuffie") fired a single shot which struck Shipley in the chest.

- 2 -

Harper rushed Shipley to the hospital. McDuffie and Appellant were arrested for attempting to murder Shipley. While Appellant was free on $200,000.00 bond, she continued to harass Harper.

The Commonwealth charged Appellant via criminal information with attempted murder,[1] solicitation to commit murder,[2] aggravated assault,[3] conspiracy to commit aggravated assault,[4] solicitation to commit aggravated assault,[5] possessing an instrument of crime,[6] simple assault,[7] recklessly endangering another person,[8] two counts of stalking,[9] two counts of making terroristic threats,[10] and two counts of harassment.[11] Shipley testified at the preliminary hearing held on February 15, 2012.

---

[1] 18 Pa.C.S.A. §§ 901, 2502.

[2] 18 Pa.C.S.A. §§ 902, 2502.

[3] 18 Pa.C.S.A. § 2702(a)(1).

[4] 18 Pa.C.S.A. §§ 903, 2702.

[5] 18 Pa.C.S.A. §§ 902, 2702.

[6] 18 Pa.C.S.A. § 907(a).

[7] 18 Pa.C.S.A. § 2701(a)(1).

[8] 18 Pa.C.S.A. § 2705.

[9] 18 Pa.C.S.A. § 2709.1(a)(1).

[10] 18 Pa.C.S.A. § 2706(a)(1).

[11] 18 Pa.C.S.A. § 2709(a)(1).

On October 3, 2014, Appellant's trial commenced. Shipley failed to appear for trial and the trial court admitted his preliminary hearing testimony over Appellant's objection. On October 11, 2013, a jury found Appellant guilty of attempted murder, aggravated assault, conspiracy to commit aggravated assault, solicitation to commit aggravated assault, two counts of making terroristic threats, and two counts of stalking. On October 29, 2014, the trial court sentenced Appellant to an aggregate term of 10 to 20 years' imprisonment.

Appellant filed a timely post-sentence motion which was denied by operation of law on March 7, 2015. Appellant did not file a timely notice of appeal. On May 7, 2015, Appellant filed a petition pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. On July 16, 2015, the PCRA court granted Appellant's petition and reinstated her direct appellate rights *nunc pro tunc*. This appeal followed.[12]

Appellant presents three issues for our review:

1. Did the [t]rial [c]ourt err, abuse its discretion, and unfairly prejudice [Appellant] when [it] overruled an objection and permitted the prosecutor to read an unavailable witness['] testimony from a preliminary hearing into the record?

---

[12] On August 11, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). ***See*** Pa.R.A.P. 1925(b). On September 4, 2015, Appellant filed her concise statement. On December 23, 2015, the trial court issued its Rule 1925(a) opinion. All issues raised on appeal were included in Appellant's concise statement.

2. Was the evidence sufficient as a matter of law to convict [Appellant] of [c]riminal [c]onspiracy to commit [a]ggravated [a]ssault?

3. Was the verdict against the weight of the evidence?

Appellant's Brief at 6.[13]

In her first issue, Appellant argues that the trial court erred by admitting Shipley's preliminary hearing testimony. We review the trial court's evidentiary rulings for an abuse of discretion. **Commonwealth v. Tyack**, 128 A.3d 254, 257 (Pa. Super. 2015) (citation omitted).

Admission of preliminary hearing testimony at trial is governed by Pennsylvania Rule of Evidence 804(b), which provides in part that:

> The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:
>
> (1)   Former Testimony. Testimony that:
>
> (A)   was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

---

[13] Appellant is represented by retained counsel and was not granted leave to proceed *in forma pauperis* before this Court. As such, she was required to file a reproduced record with this Court. **See** Pa.R.A.P. 2151 *et seq*. As this Court has stated, the failure to file a reproduced record is an "abject" failure to comply with the Pennsylvania Rules of Appellate Procedure and warrants dismissal of an appeal. **McGee v. Muldowney**, 750 A.2d 912, 913 n.1 (Pa. Super. 2000); **see In re Crespo**, 738 A.2d 1010, 1013 n.2 (Pa. Super. 1999) ("Compliance with the Pennsylvania Rules of Appellate Procedure [] regarding the contents of reproduced records on appeal is mandatory."). In this case, Appellant failed to file a reproduced record. Although we could quash or dismiss this appeal pursuant to Pennsylvania Rule of Appellate Procedure 2101, we exercise our discretion and decline to dismiss or quash this appeal.

(B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

* * *

(6) Statement Offered Against a Party That Wrongfully Caused the Declarant's Unavailability. A statement offered against a party that wrongfully caused--or acquiesced in wrongfully causing--the declarant's unavailability as a witness, and did so intending that result.

Pa.R.Evid. 804(b).

In this case, the trial court found that the Shipley's testimony was admissible under Rule 804(b)(6). *See* N.T., 10/8/13, at 20, 22. In order for prior testimony to be admissible under Rule 804(b)(6), the Commonwealth must prove "by a preponderance of the evidence that: (1) the defendant . . . was involved in, or responsible for, procuring the unavailability of the declarant and (2) the defendant acted with the intent of procuring the declarant's unavailability as an actual or potential witness." *Commonwealth v. King*, 959 A.2d 405, 414 (Pa. Super. 2008) (internal quotation marks, ellipsis, and citation omitted).

In this case, Appellant was living with Shipley at the time of trial. She accepted service of the Commonwealth's notice to Shipley that he was required to attend the trial. *See* N.T., 10/8/13, at 77. The bench warrant issued for Shipley's arrest was served at Appellant's residence, when Appellant's son was at home. *See id.* at 79. It is also evident that Shipley was in an abusive relationship with Appellant. From this circumstantial

- 6 -

evidence, the trial court reasonably concluded that Appellant wrongfully caused Shipley's absence from the trial. Therefore, Shipley's preliminary hearing testimony was admissible under Rule 804(b)(6). Thus, Appellant is not entitled to relief on her first issue.[14]

In her second issue, Appellant argues that the evidence was insufficient to convict her of conspiracy to commit aggravated assault. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Walls***, 144 A.3d 926, 931 (Pa. Super. 2016) (citation omitted). "In assessing Appellant's sufficiency challenge, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that the Commonwealth proved [each] element of the crime beyond a reasonable doubt." ***Commonwealth v. Ansell***, 143 A.3d 944, 949 (Pa. Super. 2016) (citation omitted). "The evidence need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Commonwealth v. Ford***, 141 A.3d 547, 552 (Pa. Super. 2016) (citation omitted).

In order to convict a defendant of conspiracy to commit an offense, "the Commonwealth must establish the defendant: 1) entered into an

---

[14] Rule 804(b)(6) does not infringe upon Appellant's Confrontation Clause rights. ***See Crawford v. Washington***, 541 U.S. 36, 62 (2004).

agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1114 (Pa. Super. 2016) (*en banc*) (internal quotation marks and citation omitted). "[A] conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation." ***Commonwealth. v. Orie Melvin***, 103 A.3d 1, 43 (Pa. Super. 2014) (citation omitted).

In this case, there was overwhelming circumstantial evidence to support Appellant's conviction for conspiracy to commit aggravated assault. Appellant told Shipley that "You just do you. F**k me too good and not [sic] it's my turn to f**k you. I should have just made you my bitch because you damn sure ain't no man." N.T., 10/9/2013, at 23. Appellant also told Shipley, "Like I told you, this is going to be the last time that you're going to reject me." ***Id.*** at 35. Furthermore, she told Shipley that she was the person responsible for calling various individuals to follow Harper and Wilks to Shipley's place of employment and ten more vehicles full of her confederates were on the way to intercept Harper, Wilks, and Shipley. ***See*** N.T., 10/7/15, at 75.

Appellant argues that the evidence shows that she was attempting to harm Harper and Wilks, not Shipley. She contends that the statement made

- 8 -

to Shipley while Harper's car was stuck in traffic on the way to the police station proves that she was not conspiring to harm Shipley. As noted above, however, Appellant also threatened Shipley by stating that this was the last time he would reject her. Moreover, Appellant told Shipley that she intended to exact revenge for his actions. Contrary to Appellant's contention, these statements were not vague and ambiguous in light of the surrounding circumstances. Appellant not only followed Harper but she also followed Shipley and Wilks from Shipley's place of employment to the gas station and then to the police station. She drove dangerously close to the vehicle Shipley was riding in on an interstate and then proceeded to dangerously confront Shipley, Harper, and Wilks in the middle of a busy intersection. Combined, the jury reasonably concluded that Appellant conspired with McDuffie to assault Shipley. Accordingly, we conclude that there was sufficient evidence to convict Appellant of conspiracy to commit aggravated assault.

In her final issue, Appellant argues that the verdict was against the weight of the evidence. A challenge to the weight of the evidence must first be raised at the trial level "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." *In re J.B.*, 106 A.3d 76, 97 (Pa. 2014) (citation omitted). Appellant properly preserved her weight of the evidence claim by raising the issue in her post-sentence motion.

"[A] new trial based on a weight of the evidence claim is only warranted where the [] verdict is so contrary to the evidence that it shocks one's sense of justice." *Commonwealth v. Tejada*, 107 A.3d 788, 795-796 (Pa. Super. 2015), *appeal denied*, 119 A.3d 351 (Pa. 2015) (internal alteration and citation omitted). This Court merely assesses the exercise of the trial court's discretion, "we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence." *Commonwealth v. Ferguson*, 107 A.3d 206, 213 (Pa. Super. 2015) (citation omitted).

Appellant argues that the verdict was against the weight of the evidence for essentially the same reasons that she argues there was insufficient evidence to convict her of conspiracy to commit aggravated assault. She contends that there was no evidence that there was communication between her and McDuffie on the day that McDuffie shot Shipley. Again, this argument ignores the fact that Appellant told Shipley that she was the person responsible for gathering the individuals that followed Harper, Wilks, and Shipley from Shipley's place of employment to the police station. Appellant also told Shipley that she had ten more vehicles full of confederates on the way. The jury determined that one of these confederates was McDuffie. Together with the text messages sent by Appellant to Shipley, the jury determined that Appellant conspired with McDuffie to shoot Shipley.

We conclude that the trial court reasonably determined that the jury's verdict did not shock its sense of justice. There was substantial evidence presented at trial that Appellant was intent on obtaining revenge against Harper and Shipley. She not only followed Harper to Shipley's place of employment and then to a police station, but she continued her harassing behavior after leaving the police station. She even continued her criminal behavior towards Harper after being released on bond while awaiting trial on the pending charges. From the totality of the evidence presented, the trial court reasonably determined that the jury's verdict did not shock its sense of justice. Accordingly, Appellant is not entitled to relief on her weight of the evidence claim.

Judgment of sentence affirmed.

Judge Solano joins this Memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2017