# Dengler v. Marsh.

130

*Carmen F. Lamancusa*, for plaintiff.
*Richard E. Rush*, for defendant.

MOTTO, *J.*, October 3, 2012—Before the court for disposition is defendant's motion for summary judgment asserting that plaintiff is precluded from recovering non-economic loss by 75 Pa.C.S.A. §1705(d) because the plaintiff made a limited tort election and, plaintiff has failed to adduce sufficient evidence from which a finding could be made that plaintiff suffered a "serious injury" within the meaning of 75 Pa.C.S.A. §1702.

At approximately 3:34 p.m. on April 17, 2009, plaintiff Kimberly Dengler was operating a motor vehicle and stopped at a traffic light on East Washington Street in the city of New castle, when she was struck from behind by a vehicle driven by defendant, Amy March. The force of the collision caused plaintiff's vehicle to strike the vehicle directly in front of her, causing a chain reaction with two other vehicles. After the collision, plaintiff

was able to exit her vehicle and stated that she didn't experience any pain at that point in time. As a result of the collision, plaintiff's forehead hit the rear-view mirror and was bleeding. Plaintiff did not request to be examined by the EMS personnel that were present at the scene and did not request to be taken by the ambulance to the hospital. Plaintiff drove her vehicle home from the scene of the accident. At home she cleaned the blood from her forehead and treated her forehead cut with a Band-Aid.

Approximately four hours after the accident, plaintiff went to the emergency room at Jameson Memorial Hospital to seek treatment for the injury to her forehead. The hospital records indicate that she had a 3cm superficial abrasion to her forehead that was closed with the skin glue, Dermabond. Since plaintiff also complained of neck and shoulder pain, a cervical spine x-ray was performed. The x-ray was negative for a cervical fracture. The radiology report did note that plaintiff suffered from a cervical spondylosis, a chronic degeneration of the vertebrae in the neck. She was discharged with orders to follow up with her primary care doctor in three days.

Plaintiff started to experience neck pain approximately three days after the collision. she first noticed back pain that she described as progressively worsening within a few weeks of the accident. On May 21, 2009, five weeks after the accident, plaintiff visited her chiropractor, David Hosaflook, D.C. A CT scan of her lumbar spine performed on August 6, 2009 noted an old healed fracture of the spinous process of L5. Dr. Hosaflook reported that the fracture noted on the CT scan occurred sometime prior to the April 17, 2009 accident. Dr. Hosaflook's medical records indicate that plaintiff complained of a "dull

ache" in her neck and back with the intensity described as "moderate." Medical records indicate that plaintiff received chiropractic care from Dr. Hosaflook through April 30, 2010 with adjustments of the neck and back.

On May 29, 2009, approximately six weeks after the accident, plaintiff went to see her primary care doctor. During this visit, plaintiff did not indicate that she was suffering any neck or back pain. The doctor noted that plaintiff appears healthy with no signs of acute distress present.

Plaintiff contends that she suffers from neck and back pain as a result of the motor vehicle accident. Plaintiff explained that the feelings of tiredness and weakness that she initially experienced after the accident went away a few days after the accident. She believes that she started to experience neck pain three days after the accident. Moreover, she first noticed back pain a few weeks after the accident and she described it as progressively worsening. She first sought medical care for these complaints a few weeks after the accident.

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after the relevant discovery has been completed. *Miller v. Sacred Heart Hospital*, 753 A.2d 829 (Pa.Super. 2000). Any party may move for summary judgment in whole or in part as a matter of law whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report or if, after the completion of discovery relevant to the motion, including the production of expert

reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Pa.R.C.P. No. 1035.2.

Summary judgment may be granted only in cases where it is clear and free from doubt that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law. *Kafando Erie Ceramic Art Co.*, 764 A.2d 59, 61 (Pa.Super. 2000)(citing *Rush v. Philadelphia Newspapers, Inc.*, 732 A.2d 648, 650-651 (Pa.Super. 1999)). A material fact, for summary judgment purposes, is one that directly affects the outcome of the case. *Gerrow v. Silicones, Inc.*, 756 A.2d 697 (Pa. Super. 2000).

When determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hughes v. Seven Springs Farm Inc.*, 563 pa. 501, 752 A.2d 339 (2000); *Dean v. Commonwealth Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000). Summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pennsylvania State Ethics Comm'n*, 555 Pa. 149, 153, 723 A.2d 174, 175 (1999); *Basile v. H&R Block*, 761 A.2d 1115 (Pa.Super. 2001); *Kuney v. Benjamin Franklin Clinic*, 751 A.2d 662 (Pa.Super. 2000); *Stevens Painton*

*Corporation v. First state Insurance Company*, 746 A.2d 649 (Pa.Super. 2000).

Only when the facts are so clear that reasonable minds cannot differ, a trial court may property enter summary judgment. *Basile*, supra. If there are no genuine issues of material fact in dispute or if the non-moving party has failed to state a prima facie case, summary judgment may be granted. *Dudley v. USX corporation*, 414 Pa.Super. 160, 606 A.2d 916 (1992). Thus, a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense. *Rauch v. Mike-Mayer*, 783 A.2d 815 (Pa.Super. 2001). The trial court must confine its inquiry when confronted with a motion for summary judgment to questions of whether material factual disputes exist. *Township of Bensalem v. Moore*, 152 Pa.Cmwlth. 540, 620 A.2d 76 (1993). It is not the function of the Court ruling on a motion for summary judgment to weigh evidence and to determine the truth of the matter. *Keenheel v. Pennsylvania Securities Commission*, 143 Pa.Cmwlth. 494, 579 A.2d 1358 (1990).

The court must examine whether the plaintiff is precluded from recovering non-economic loss. 75 Pa.C.S.A. §1705(d) sets forth that a person who elects the limited tort alternative is eligible to seek economic losses sustained during an automobile accident, but is precluded from recovery for any non-economic loss unless that person sustains a serious injury. Serious injury is defined as "A personal injury resulting in death, serious impairment of bodily function or permanent serious disfigurement." 75 Pa.C.S.A. §1702.

The defendant contends the record establishes that the plaintiff did not suffer serious injury and is precluded from recovering for non-economic loss pursuant to 75 pa.C.S.A. §1705(d). In support of that argument, the defendants cited *Washington v. Baxter*, 553 Pa. 434, 719 A.2d 733 (1998). In *Washington*, the appellant had made a limited tort election. As the result of an automobile accident, the appellant suffered several injuries, which included a cervical strain, cuts and contusions and a mild sprain of his right foot. He was prescribed an analgesic and was discharged from the hospital. The appellant was unable to report to work at his full-time job for four or five days and was unable to return to his part time job for one or two months. Approximately five months after the accident, the appellant began treating with a doctor who diagnosed the appellant with subtalar joint arthritis, which was treated with a cortisone injection. The doctor also noted that the appellant had limited range of motion in the right foot, but did not express whether that limitation was minimal or severe. The appellant testified that he was able to return to his normal duties at work. The only limitation the appellant experienced was that he could no longer use a push lawn mower and he needed to use a riding mower.

Based on those facts, trial court granted defendant/appellee's motion for summary judgment. The decision was affirmed on appeal by the Pennsylvania Superior Court. The appellant subsequently filed a petition for allowance of appeal, which was granted by the Pennsylvania Supreme Court. The *Washington* court noted that the statute does not indicate whether the judge or the jury should decide if the appellant's injuries were serious. *Id.* 533 Pa. at 444, 719 A.2d at 738. However, a review of the legislative

history and persuasive case law precedent from Michigan indicated that a ruling of whether a serious injury has been sustained is not to be made routinely by a trial judge and the court must apply the traditional summary judgment standards to that determination. *Id.* 553 Pa. at 446, 719 A.2d at 740. Thus, that issue should be reserved for a jury, unless reasonable minds could not differ on whether a serious injury was sustained. *Id.* The court set forth a two part inquiry to determine whether a serious impairment has occurred: 1) what body function was impaired; and 2) was the impairment serious. The focus is not on the injury itself, but how the injury affects a particular body function. Then, in determining whether an impairment is serious, the courts should consider several factors: the extent of the impairment, the particular body function impaired, the length of time of the impairment, the treatment required and any other relevant factor. *Id.*

The *Washington* court determined that reasonable minds could not differ on the conclusion that the appellant's injuries were not serious because the injuries he was treated for by the emergency room doctor were mild and he only missed four or five shifts at work for both his full-time and part-time jobs. *Id.* 553 Pa. at 449, 719 A.2d at 741. Therefore, the court ruled that the appellant's injuries did not impair his job performance and had little or no impact on his personal activities. *Id.* As a result, the *Washington* court held that summary judgment was appropriate because the appellant failed to establish that he suffered serious injuries from the automobile accident. *Id.*

In *Robinson v. Upole*, 750 A.2d 339 (Pa.Super. 2000), the court determined that it was the duty of a jury to decide

whether the plaintiff suffered serious injuries arising from a motor vehicle accident. As a result of the accident, the plaintiff suffered chronic pain syndrome, fibromyalgia and a sleep impairment. The plaintiff was able to return to work with certain limitations; however, she had to severely reduce her recreational activities and hire a housekeeper due to her pain. The trial court granted the defendant's motion for judgment N.O.V. because it ruled as a matter of law that the plaintiff did not suffer serious injuries. The plaintiff subsequently appealed that decision.

The *Robinson* court explained that it was necessary for the plaintiff to establish that she suffered serious injuries to permit recovery for non-economic loss under 75 Pa.C.S.A. §1705(a). *Id.* Pa. Super. 104, 750 A.2d at 341. The court instructed that *Washington* established that it was the duty of the jury to decide if the plaintiff suffered serious injuries, unless reasonable minds could not differ on that question. *Id.* Pa. Super. 104, 750 A.2d at 342. The focus of this inquiry is not on the injuries, but on the effect the injury has on bodily function. *Id.* (citing *Washington*, supra.). The *Robinson* court emphasized that the plaintiff was limited in her work and recreational activities resulting from her injuries and had difficulty sleeping. Thus, the court held that reasonable minds could differ as to whether the plaintiff suffered serious injuries and it was necessary to present that issue to a jury. *Id.* Pa. Super 104, 750 A.2d at 343.

Moreover, in *McGee v. Muldowney*, 750 A.2d 912 (Pa. Super. 2000), the Superior Court reviewed whether a plaintiff who suffered from back and neck pain following a motor vehicle accident met the serious injury requirement under 75 Pa.C.S.A. §1705(a). The plaintiff was initially

treated in the emergency room and diagnosed with cervical strain and sprain and was given a prescription for Tylenol. He did not seek treatment for 10 days after the accident. When he went to be examined by his doctore he was diagnosed with acute cervical, thoracic and lumbosacral strain and sprain and was treated with several months of physical therapy. He was also evaluated by an orthopedic physician and an orthopedic surgeon. The plaintiff contended that the injuries prevented him from continuing his job as a plumber and required him to undertake the trade of an electrician.

The Superior Court upheld the granting of defendant's motion for summary judgment on the basis that plaintiff did not establish that he suffered a serious injury under 75 Pa.C.S.A. §1705(a). *Id.* at 915. The court concluded that in the absence of objective medical evidence as to the degree of any impairment and extent of any pain suffered, the plaintiff was unable to establish that his injuries resulted in such substantial interference with any bodily function as to permit a conclusion that the injuries have resulted in a serious impact on his life for an extended period of time. *Id.*

In the case sub judice, plaintiff contends that as a result of the accident she has suffered serious injuries to her forehead, neck and back. After the accident, plaintiff was treated at Jameson Hospital for the injury to her forehead and a cervical spine x-ray was performed which was negative for a cervical fracture. The hospital records indicate that she had a 3cm superficial abrasion to her forehead that was closed with the skin glue, Dermabond. Furthermore, plaintiff did not make an appointment to see her primary care doctor until approximately six

weeks after the accident at which time the doctor notes that plaintiff does not mention that she is suffering from back or neck pain and has no signs of acute distress. At the time of the accident plaintiff was on social security disability and therefore did not miss any work. Plaintiff testified at the deposition that she was taking courses at the local community college and did not miss, any classes as a result of the accident. Moreover, plaintiff was unable at her deposition to identify any limitations in her activities due to her injuries. Plaintiff indicated that after the accident she had trouble walking; however, she later testified that she currently swims and walks on a treadmill at the local YMCA. Plaintiff indicated that at the time of the accident she was enrolled in a Pilates exercise class and she was able to continue participating in the class with only limited restrictions. Furthermore, in the three years following the accident plaintiff has taken classes in yoga 1 and yoga 2 at a local community college. The record reflects that plaintiff denied any back or neck pain after the accident. The x-ray taken in the emergency room at Jameson Hospital was negative for cervical fractures and noted degenerative changes. Plaintiff started treating with her chiropractor approximately five weeks after the accident and during her first visit described the pain in her neck and back as "dull" and "moderate." Dr. Hosaflook ordered a CT scan four months after the accident and found that the plaintiff had an old healed fracture of the spinoius process of L5. which occurred sometime prior to the April 17, 2009 motor vehicle accident. Plaintiff testified that she had treated with Dr. Hosaflook for neck and back issues approximately five years prior to the accident.

As part of her response to defendant's motion for

summary judgment, plaintiff filed the medical report of David E. Hosaflook, D.C.

Plaintiff had presented herself to Dr. Hosaflook on May 21, 2009 for injuries suffered from the April 17, 2009 auto accident. The critical portions of Dr. Hosaflook's report are as follows:

...

Ms. Dengler reports since her auto accident that she still has lower back pain and is unable to do everything she wants to do, due to her pain level. She reported if she cleans the house that her pain level increases and that if she stands or walks for any length of time her pain gets so bad she has to sit down.

Ms. Dengler has a loss of body impairment as to which she cannot perform all of her daily activities, like cleaning or walking any distance without increasing pain to her lower back. Furthermore, the patient cannot relate any real trauma to her lower back other than the auto accident as Dr. waltrip noted.

The CT and MRI both revealed an old fracture. The CT was done four months post the auto accident thus allowing any fractures to heal in that time frame.

Ms. Dengler did receive treatment at the Mount Jackson Chiropractic Center, P.C. in the past but that was almost five years prior to the accident. After the auto accident of April 17, 2009, Ms. Dengler presented herself with complaints of cervical and lower back, thus showing the auto accident was the sole cause of her complaints.

Her diagnosis is Acute subluxation of the cervical, thoracic and lumbar spine, using the following chiropractic codes, 739.1, 739.2, 739.2.

Based upon the foregoing expert report of Dr. Hosaflook, the court concludes that reasonable minds could differ on whether plaintiff suffered a "serious injury" within the meaning of 75 Pa.C.S.A. §1702. According to Dr. Hosaflook, she reports that if she cleans the house her pain level increases and that if she stands or walks "any length of time" her pain gets so bad that she has to sit down. Dr. Hosaflook concluded that she has a loss of body impairment "as to which she cannot perform all of her daily activities, like cleaning or walking any distance without increasing pain to her lower back". Dr. Hosaflook concludes that the "auto accident was the sole cause of her complaints". It is not the function of the Court on a motion for summary judgment to assess the credibility of the reported complaints of the plaintiff to Dr. Hosaflook or the credibility of the medical report itself. In *Washington v. Baxter*, Supra, summary judgment was upheld because the record reflected that the injuries had little or no impact on the plaintiff's personal activities. In *Robinson v. Upoli*, Supra, the Superior Court reversed the trial court's grant of motion for judgment N.O.V. because of evidence that showed plaintiff was limited in her work and recreational activities and had difficulty sleeping, thus concluding that reasonable minds could differ as to whether plaintiff suffered a serious injury. In *McGee v. Muldowney*, the Superior Court upheld a defendant's motion for summary judgment because of a lack of objective medical evidence as to the degree of any impairment and extent of any

pain suffered, thus concluding that plaintiff was unable to establish that his injuries resulted in a substantial interference with any bodily function as to commit a conclusion that the injuries resulted in a serious impact on his life for any extended period.

Here, plaintiff has produced a medical report referencing complaints of being unable to clean her house without increasing pain and being unable to stand or walk for any period of time without having to sit down. The medical report further relates these complaints to the auto accident that is the subject of this suit. Plaintiff has therefore presented medical evidence as to the degree of her impairment and extent of pain and her relationship of her complaints and injuries to the auto accident. Therefore, it is necessary to present the issue of whether plaintiff suffered a serious injury to the jury.

Although the court will deny the motion for summary judgment on the basis of plaintiff's complaint of neck and back pain limiting her daily activities, the court will nevertheless address the plaintiff's claim of disfigurement. The court here finds that plaintiff has failed to demonstrate that she suffered permanent disfigurement as a result of the 3cm abrasion on her forehead. In *Walsh v. Phillips*, 38 Pa.D.&C.4th 178 (1997), the court was asked to determine whether a facial scar met the permanent serious disfigurement requirement under 75 Pa.C.S.A. §1705. The plaintiff in *Walsh* suffered lacerations to his right eyelid, temple and forehead, requiring sutures and surgery. According to plaintiff's plastic surgeon, the laceration to the right temple area was approximately 7cm; the forehead 3.5cm; and the right upper eyelid 2.5cm. After closely

examining the plaintiff's face, the court found that there was no evidence that plaintiff suffered permanent serious disfigurement as intended by the legislature when enacting 75 Pa.C.S.A. §1705. The court noted in a case such as this, the appearance of the plaintiff furnishes the best evidence of permanent and serious disfigurement. After carefully examining the plaintiff, the court found that the scars were barely discernable. Thus, because the plaintiff failed to produce sufficient evidence to establish he suffered permanent serious injury in the form of permanent serious disfigurement, the court granted defendants' motion for summary judgment and dismissed the case.

In the case sub judice, the court reviewed recent photographs of the plaintiff taken nearly 20 months after the accident illustrating the scar on her forehead. The pictures produced by plaintiff shows a barely visible pale line on her forehead. The court notes that a healed 3cm scar is visible on plaintiff's forehead, but the court finds that this injury is not significant enough to meet the permanent serious disfigurement exception under 75 Pa.C.S.A. §1705. The scar is barely discernable and can easily be covered by wearing her hair down over her forehead. The medical records from Jameson Hospital indicated that plaintiff had a 3cm abrasion on her forehead after the accident and it was repaired in the emergency room with the skin glue Dermabond. Plaintiff did not require stitches or any further treatment for her wound. Accordingly, the court finds that plaintiff has not proved, as a matter of law, that she suffered a permanent serious disfigurement.

For the reasons set forth in this opinion, defendant's motion for summary judgment will be denied by separate

144

order.

## ORDER OF COURT

And now, October 3, 2012, for the reasons set forth in the accompanying opinion of even date herewith, it is ordered and decreed that the defendant's motion for summary judgment is denied.